[No. A129584. First Dist., Div. One. June 27, 2011.]

LATINOS UNIDOS DE NAPA, Plaintiff and Appellant, v.
CITY OF NAPA et al., Defendants and Respondents.

**COUNSEL**

Law Offices of David Grabill and David Grabill for Plaintiff and Appellant.

Jarvis, Fay, Doporto & Gibson, Andrea J. Saltzman, Rick W. Jarvis and Julie M. Randolph for Defendants and Respondents.

**OPINION**

**MARCHIANO, P. J.**—Affordable housing advocates Latinos Unidos de Napa (plaintiff) filed a petition for writ of mandate against the City of Napa (City), its city manager, and its community development director (defendants) seeking to set aside the City's approval of revisions to the housing element of its general plan, and related general plan and zoning amendments (the Project), on the ground that an environmental impact report (EIR) for the Project is required. The City had concluded that the Project would not result in any new significant environmental effects that were not identified and mitigated in its 1998 general plan program EIR, and filed a notice of determination (NOD) to that effect with the county clerk. The court dismissed plaintiff's petition on statute of limitations grounds.

At issue in this appeal is Public Resources Code section 21152, subdivision (c), which requires the county clerk to post the NOD "for a period of 30 days."[1] We conclude calculation of the 30-day period under this statute is governed by Code of Civil Procedure section 12, which excludes the first day of posting and includes the last. We further conclude the NOD must be

---

[1] Unless otherwise indicated, subsequent statutory references are to the Public Resources Code.

posted for the entire last (30th) day to satisfy the 30-day posting requirement. Consistent with these conclusions, we reverse the judgment of dismissal of plaintiff's case, which was based on the running of the statute of limitations.

## I. BACKGROUND

On June 16, 2009, the city council approved resolution No. R2009 80 adopting the general plan housing element amendment, resolution No. R2009 79 with conforming amendments to the land use element and map, and the first reading of ordinance No. 02009 11 with conforming amendments to the zoning code and map. Section 21152, subdivision (a) provides that "[w]henever a local agency approves or determines to carry out a project that is subject to this division, the local agency shall file notice of the approval or the determination within five working days after the approval or determination becomes final, with the county clerk of each county in which the project will be located." On June 17, 2009, the City filed its NOD with the Napa County Clerk stating that no new EIR was required for the Project. The NOD was hand delivered by City staff to the county clerk on that date, and a cash register receipt for payment of an administrative fee shows that the county clerk received the document at 9:05 a.m.

Section 21152, subdivision (c) directs "[a]ll notices filed pursuant to this section shall be available for public inspection, and shall be posted within 24 hours of receipt in the office of the county clerk. A notice shall remain posted for a period of 30 days. Thereafter, the clerk shall return the notice to the local agency with a notation of the period it was posted." On July 17, 2009, Napa County Deputy Clerk Recorder Joan Jorgensen prepared and executed a "County Clerk's Certificate of Posting," in which she certified that she had posted the NOD in the county clerk's office "for the following time period: 6/17/2009 through 7/17/2009."

Jorgensen stated in declaration she had no specific recollection of the NOD in this case, but that her signature on the certificate of posting showed that she would have followed the office's standard procedure for NOD's in this instance. Jorgensen said when an NOD is received for filing and posting, it is "cashiered," "which creates an electronic record of the date and time payment is received. Immediately after the cashiering is completed, the Clerk who cashiered the notice stamps the original Notice 'filed' . . . . Once the Notice is thus filed, a Deputy Recorder-Clerk then posts the original, filed notice on a bulletin board in the public area of the office for a period of at least 30 days after the date on which the notice is first posted (not counting the day on which the notice is first posted, so that there are actually at least 31 days during which the notice is posted all or part of the day). The normal procedure is to remove the filed, original notice no earlier than 4:00 p.m. (and

usually between 4:30 and 5:00 p.m.) of the 30th day of the posting period, although it is possible that a notice could be removed earlier in the day."

Jorgensen said when an NOD is hand delivered by City staff, "we typically post it within less than an hour of its having been cashiered. Thus, the [NOD in this case] would have been posted by 10 a.m. on June 17, 2009. Based upon my signature on the County Clerk's Certificate of Posting and the fact that the certificate states that the notice was posted from June 17, 2009 through July 17, 2009, and based upon our office's standard procedures and the procedures which I normally follow, I am certain that the notice was posted at least until 10 a.m. (and likely later) on July 17, 2009. It was thus posted for at least a full 30 day period, from 10 a.m. on June 17, 2009, until at least 10 a.m. on July 17, 2009."

Plaintiff's counsel, David Grabill, stated in a declaration he and another attorney, Dylan Saake, went to the Napa County Clerk's office on the morning of July 17, 2009, to see if an NOD for the Project was posted. They did not find a posted NOD for the Project, and Grabill took a photo of the bulletin board at 11:29 a.m. to make a record of the date and time they inspected the posted documents. Saake executed a declaration corroborating Grabill's statements.

Plaintiff filed its petition for writ of mandate under the California Environmental Quality Act (§ 21000 et seq.; CEQA), and complaint for declaratory and injunctive relief, against defendants on September 17, 2009. Additional causes of action were added in a first amended petition. Defendants moved for judgment on the CEQA cause of action on the ground that it was barred by the running of the 30-day statute of limitations set forth in section 21167, subdivision (e) because it was commenced more than 30 days after the filing of the NOD with the county clerk.[2] Plaintiff argued in opposition to the

---

[2] On appeal, defendants contend that the 30-day statute of limitations of section 21167, subdivision (b), rather than subdivision (e), applies—a distinction that is irrelevant to the issues we are called upon to address. (See *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 39 [105 Cal.Rptr.3d 181, 224 P.3d 920] (*Green Foothills*) ["the filing of an NOD triggers a 30-day statute of limitations for all CEQA challenges to the decision announced in the notice"].) These subdivisions provide: "An action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows: [¶] . . . [¶]

"(b) An action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152. [¶] . . . [¶]

"(e) An action or proceeding alleging that another act or omission of a public agency does not comply with this division shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152." (§ 21167.)

motion that the 180-day statute of limitations of section 21167, subdivision (a) applied because the filing and posting of the NOD failed to comply with statutory requirements. Plaintiff maintained the NOD was not posted for 30 days as mandated by section 21152, subdivision (c), and that the NOD was filed prematurely on June 17, 2009, because part of the Project, ordinance No. 02009 11, was not finally approved until July 7, 2009.

The court rejected plaintiff's arguments, and granted defendant's motion for judgment on the CEQA cause of action. Plaintiff thereafter voluntarily dismissed its other causes of action, and judgment was entered for defendants from which plaintiff now appeals.

## II. DISCUSSION

The Jorgensen declaration provided substantial evidence that the NOD in this case was posted over the course of 31 consecutive days, from 10:00 a.m. on June 17, 2009, until at least 10:00 a.m. on July 17, 2009. Plaintiff submits that this period of posting was insufficient to comply with the 30-day posting requirement of section 21152, subdivision (c) because the period of posting should be calculated pursuant to Code of Civil Procedure section 12, which states: "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." If the first day of posting is excluded here, the 30th day of posting was July 17, 2009. Plaintiff further argues that posting for only a fraction of that last day, as apparently occurred in this case, does not satisfy the 30-day posting requirement.

 If an NOD is not posted as required by section 21152, subdivision (c), a 180-day limitation period applies, dating from the agency's decision to approve or carry out the project, or commencement of the project if the project is undertaken without a formal decision by the agency. (See CEQA guidelines [Cal. Code Regs., tit. 14, § 15000 et seq.; hereafter Guidelines]; Guidelines, § 15112, subd. (c)(5); *Lewis v. Seventeenth Dist. Agricultural Assn.* (1985) 165 Cal.App.3d 823, 835 [211 Cal.Rptr. 884] ["because the notice [of exemption] was not posted pursuant to section 21152, subdivision (c), the 180-day statute of limitations applies"]; *Citizens of Lake Murray Area Assn. v. City Council* (1982) 129 Cal.App.3d 436, 438, 440 [181 Cal.Rptr. 123] (*Lake Murray*) [30-day statute of limitations inapplicable because county clerk failed to post notice in accordance with § 21152, subd. (c)].) If the statute of limitations was 180 days rather than 30, then plaintiff's petition was timely.

 We agree with plaintiff Code of Civil Procedure section 12 is applicable in determining how long an NOD must be posted, and thus that the

first day on which an NOD is posted is not counted as part of the 30-day posting period. ■ Code of Civil Procedure section 12 sets forth "the ordinary rule of computation of time." (*Ley v. Dominguez* (1931) 212 Cal. 587, 594 [299 P. 713] (*Ley*).) The *Ley* case involved a city charter provision stating that "no ordinance shall go into effect 'until' the expiration of thirty days from its publication." (*Ibid.*) The court applied Code of Civil Procedure section 12, and rejected an argument the date of publication was included in computing the 30-day period. The court wrote: "The gravest considerations of public order and security require that the method of computing time be definite and certain. Before a given case will be deemed to come under an exception to the general rule the intention must be clearly expressed that a different method of computation was provided for." (*Ley, supra*, 212 Cal. at pp. 594–595.) This passage in *Ley* was quoted in *In re Anthony B.* (2002) 104 Cal.App.4th 677, 682 [128 Cal.Rptr.2d 349] (*Anthony B.*), as "encourag[ing] the use of uniform rules so that the method of computing time not be a source of doubt or confusion." Thus, "[a]bsent a compelling reason for a departure, this rule [(Code Civ. Proc., § 12)] governs the calculation of *all* statutorily prescribed time periods." (*Ibid.*)

Defendants identify no clear expression of intent, or compelling reason, to except the computation of the 30-day period in section 21152, subdivision (c) from the general rule of Code of Civil Procedure section 12. Defendants acknowledge Code of Civil Procedure section 12 applies in calculating the 30-day statutes of limitations in section 21167 that run from the filing of an NOD. Defendants call section 21152, subdivision (c) "a *durational* require-ment, *not* a statute of limitations," and claim that plaintiff's argument to the contrary is "created . . . out of whole cloth," but multiple authorities establish that the 30-day statutes of limitations do not begin to run until both the filing *and* the posting of an NOD, as we now explain.

■ Section 15094 of the Guidelines states in relevant part: ". . . (d) If the lead agency is a local agency, the local lead agency shall file the notice of determination with the county clerk of the county or counties in which the project will be located . . . . [¶] (e) A notice of determination filed with the county clerk shall be available for public inspection and shall be posted within 24 hours of receipt for a period of at least 30 days. . . . [¶] . . . [¶] (g) The . . . filing *and posting* of the notice of determination pursuant to subdivisions (d) and (e) above for local agencies, start a 30-day statute of limitations on court challenges to the approval under CEQA." (Italics added; see also Guidelines, § 15112, subd. (c) [where an NOD has been filed in compliance with Guidelines, § 15094, the statute of limitations is "30 days after the filing of the notice and the posting on a list of such notices"].) In *Lake Murray, supra*, 129 Cal.App.3d at pages 439–441, the court rejected an argument that "the mere filing of the notice of determination with the county

clerk commences the 30-day period of limitations [in section 21167, subdivision (b)]," and "conclude[d] the 30-day period does not start running until the day the notice is posted in the office of the county clerk." *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 532 [78 Cal.Rptr.3d 1] (*Sierra Club*), likewise holds that "[t]o be timely, an action challenging the adequacy of an EIR must be commenced within 30 days after the county clerk posts the notice of determination that the project's lead agency has filed with it." (See also 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2011) § 23.21, pp. 1158–1160 ["[a]lthough [section 21167] refers to filing the notice as the event that triggers the statute of limitations . . . the statute of limitations begins to run on the date on which the notice is actually posted and made available for public review" (citation omitted)]; Remy et al., Guide to CEQA, Cal. Environmental Quality Act (11th ed. 2007) p. 787 [30-day limitations period is triggered by the filing and posting of an NOD].) The 30-day period in section 21152, subdivision (c) thus serves as much as a statute of limitations as the 30-day periods in section 21167.

Defendants cite *Green Foothills, supra,* 48 Cal.4th 32, for the proposition "[t]he 30-day statute of limitations [under CEQA] is triggered when the NOD is filed, not by the posting of the NOD for 30 days." Some of the language in *Green Foothills,* viewed in isolation, could be taken to support defendants' position. The court held "that the filing of an NOD triggers a 30-day statute of limitations for all CEQA challenges to the decisions announced in the notice," even when "an action alleges that no environmental review was undertaken." (*Id.* at p. 39.) The court noted that "[t]he NOD plays a crucial role in determining the period during which CEQA challenges may be brought" (*id.* at p. 43), and concluded that "[i]f a valid NOD has been filed (§§ 21108, subd. (a), 21152, subd. (a)), *any* challenge to that decision under CEQA must be brought within 30 days, regardless of the nature of the alleged violation" (*id.* at p. 48). Although section 15094, subdivision (g) of the Guidelines states the "filing *and posting*" of an NOD "*start* a 30-day statute of limitations" (italics added), *Green Foothills* refers to this Guideline as "stat[ing] that the *filing* of such a notice invariably '*start[s]* a 30-day statute of limitations.' " (*Green Foothills, supra,* at pp. 48–49, italics added.) The court observed that "[a] bright-line rule that the filing of an NOD triggers a 30-day statute of limitations promotes certainty, allowing local governments and developers to proceed with projects without the threat of potential future litigation." (*Id.* at p. 50.)

But *Green Foothills* did not involve any issue of adequate posting, and the decision cannot fairly be read to abrogate the rule reflected in sections 15094 and 15112 of the Guidelines, the *Lake Murray* case, and other authorities, that posting as well as filing of an NOD is required to trigger the 30-day statute of limitations. The court cited Guidelines section 15112,

subdivision (c) as a correct summation of CEQA statutes of limitations, and quoted the full text of subdivision (c)(1), which states: "Where the public agency filed a notice of determination in compliance with [Guidelines] Sections 15075 or 15094," the statute of limitations is "30 days after the filing of the notice *and the posting* on a list of such notices." (Italics added; see *Green Foothills, supra*, 48 Cal.4th at p. 48.) The court rejected an argument that the NOD in *Green Foothills* did not trigger the 30-day statute because it was defective, reviewed cases where the contents of the notices were held to be materially deficient, and then discussed the *Lake Murray* case with apparent approval. "Defects in the posting of the notice," the court wrote, "have also been held to prevent the running of the limitation periods in section 21167. In [*Lake Murray, supra*, 129 Cal.App.3d at pages 438, 440–441], the court excused the plaintiffs from the 30-day statute of limitations because, although a valid NOD had been filed, the county clerk had failed to post the notice in accordance with section 21152, subdivision (c)." (*Green Foothills, supra*, at p. 53.)

Contrary to defendants' argument, *Green Foothills* supports our conclusion that Code of Civil Procedure section 12 governs the time within which an NOD is deemed to be posted. The court stated the controlling NOD in that case "was posted for 30 days, from December 20, 2005, through January 19, 2006." (*Green Foothills, supra*, 48 Cal.4th at p. 41.) If, as defendants maintain, the posting period includes the first day on which the NOD is posted, then the NOD in *Green Foothills* would have been posted for 31 days, rather than 30. While it is possible that the opinion may have been referring simply to compliance with the 30-day posting requirement of section 21152, subdivision (c), it appears the court was counting actual days of posting pursuant to Code of Civil Procedure section 12, excluding the first day and including the last ("*through* January 19"). (*Green Foothills, supra*, at p. 41, italics added.)

Apart from *Green Foothills*, the only cases defendants can muster against the application of Code of Civil Procedure section 12 here are *Derby v. City of Modesto* (1894) 104 Cal. 515 [38 P. 900] (*Derby*), and *Municipal Imp. Co. v. Thompson* (1927) 201 Cal. 629 [258 P. 955] (*Thompson*). However, the decisions in *Derby* and *Thompson* were discredited by *Scoville v. Anderson* (1901) 131 Cal. 590 [63 P. 1013] (*Scoville*), and *Ley, supra*, 212 Cal. 587.

*Derby* involved a statute that allowed a city to act " 'after the publication' " of an ordinance " 'for at least two weeks.' " (*Derby, supra*, 104 Cal. at p. 521.) The ordinance was published from October 6, 1892, to October 19, 1892, and the city acted on October 20, 1892. The court upheld the city's action, concluding that the 14 days of publication from October 6 to 19 satisfied the two-week publication requirement. The court declined to apply

Code of Civil Procedure section 12 to exclude the first day of publication from the two-week computation, stating that "there [was] no date or event suggesting [that] exclusion." (*Derby, supra,* 104 Cal. at p. 522.)

The issue in *Scoville, supra,* 131 Cal. 590 was whether an attachment lien was dissolved because the property was attached within one month prior to the commencement of insolvency proceedings. The attachment occurred on January 24, 1896, and the insolvency proceedings were instituted on February 24, 1896. The court applied Code of Civil Procedure section 12, excluded the day of the attachment from the one-month period, and upheld a judgment invalidating the attachment lien. The court wrote: "In measuring and computing time it has been the rule from a very early day in this state to exclude the day upon which the event happened, a rule and method of computation differing from that of the earlier English practice, which was the inclusive method, under which the time began to run upon the day of the happening of the event. Thus, while in *People v. Clark* [(1851)] 1 Cal. [406,] 408, it is said that the general rule seems to be that in the computation of time from an act done, the day of the act is to be computed, in the next case of *Price v. Whitman* [(1857)] 8 Cal. 412, the exclusive rule is adopted, and it is said: 'Of late the general rule of construction seems to have been to exclude the first day'; and in *Iron [M.] Co. v. Haight* [(1870)] 39 Cal. 540, where it was sought to have the court return to the earlier or inclusive rule, it is said: 'We think we are bound by the gravest considerations of public order and security not at this late day to disturb the rule so distinctly and authoritatively settled.' Finally, the matter was definitively put at rest by a provision placed in the codes to the effect that 'the time in which any act provided by law is to be done is computed by excluding the first day and including the last.' (Code Civ. Proc., [§] 12, Civ. Code, [§] 10, Pol. Code, [§] 12.)" (*Scoville, supra,* 131 Cal. at p. 594.)

*Thompson* involved a statute that allowed a county to act when " 'twenty days have elapsed since the posting . . . of [a] resolution of intention . . . .' " (*Thompson, supra,* 201 Cal. at p. 631.) The resolution was posted on September 25, 1923, and the county acted on October 15, 1923. The court rejected an argument the county acted before the posting period expired, holding that "the date of the posting . . . should be included in the computation of the twenty-day period . . . ." (*Id.* at p. 632.) The court declined to apply Code of Civil Procedure section 12 to exclude the first day of posting because of the "peculiar wording" of the statute in question, which referred to 20 days " 'since the posting,' " rather than " 'after the day of posting.' " (*Thompson,* at p. 632.) The court added, contrary to the reasoning in *Scoville*: "It was early recognized as settled that 'where the reckoning is to be made from an "act done [here the posting of the notice on September 25th] the day upon which it was done must, of necessity, be counted as one day, because if that day be excluded, then the count, instead of being from the

act itself, is really from the day following the doing of the act, which would be a subsequent point of time" ' (*Price* v. *Whitman*, [*supra*,] 8 Cal. 412, 416; *Iron* [*M.*] *Co.* v. *Haight*, [*supra*,] 39 Cal. 540). This is true especially when, as here, there is no indication that the day on which the act was done was intended to be excluded (*Derby*[, *supra*, 104 Cal. at p. 522]; 24 Cal. Jur. 577 et seq.)." (*Thompson*, *supra*, 201 Cal. at p. 632.)

The court then decided *Ley*, *supra*, 212 Cal. 587, where, as we have said, it applied Code of Civil Procedure section 12 in calculating a 30-day publication period specified in a city charter. Citing *Scoville*, *supra*, 131 Cal. 590, and echoing *Scoville*'s recognition of the "grave[]" need for a "definite and certain" method of computing time, the *Ley* court held that "the general rule" of Code of Civil Procedure section 12 should be applied in the absence of a clearly expressed intention to the contrary (*Ley*, *supra*, 212 Cal. at pp. 594–595)—a holding that has endured into the present century (*Anthony B.*, *supra*, 104 Cal.App.4th at p. 682). *Ley* rejected an argument based on *Thompson* that the first day of publication should be counted as part of the 30-day period: "Counsel seek to avoid the ordinary rule of computation of time, which excludes the first day and includes the last, as set forth in section 12 of the Code of Civil Procedure and section 12 of the Political Code, on the theory that the statutory rule has no application to a situation when the reckoning is to be made from an 'act done'. In such a case, it is contended, the day upon which the act is to be done must be counted as one day. ([*Thompson*, *supra*, 201 Cal. at p. 631].) Assuming the existence of such an exception to the ordinary rule for computation of time, we do not believe the situation here presented comes within the exception. The express language of . . . the charter is that no ordinance shall go into effect 'until' the expiration of thirty days from its publication. Properly interpreted, this would seem to mean thirty days *after* the publication, which necessarily excludes the day of publication." (*Ley*, *supra*, 212 Cal. at p. 594.)

Although *Ley* did not mention the *Derby* case, *Ley*'s rationale effectively overruled *Derby*. In *Derby*, an action could be taken " '*after* the publication' " of an ordinance " 'for at least two weeks' " (*Derby*, *supra*, 104 Cal. at p. 521, italics added), a situation where, under the above quoted reasoning in *Ley*, the first day of publication is excluded. *Derby*'s counting of that first day thus cannot be reconciled with *Ley*.

*Ley* also relegated *Thompson* to its "peculiar" facts. (*Thompson*, *supra*, 201 Cal. at p. 632 [describing the wording of the statute at issue in that case].) *Reichardt* v. *Reichardt* (1960) 186 Cal.App.2d 808, 810 [9 Cal.Rptr. 225] (*Reichardt*), observed that *Ley* limited the rule applied in *Thompson*, which counted the first day of a time period " ' "where the reckoning is to be made from an 'act done,' " ' " "to cases in which it appears that that rule clearly

would be promotive of substantial justice." The *Reichardt* court pointed out that *Thompson* was undermined by *Scoville* as well as *Ley*. "*Scoville*[, *supra*, 131 Cal. at page 594], discusses this matter and shows that the computation method of [*Thompson*] is an ancient English rule which is not consistent with our statutory provisions, referring specifically to Code of Civil Procedure, section 12, Civil Code, section 10, and Political Code, section 12 (now Gov. Code, § 6800)." (*Reichardt, supra*, 186 Cal.App.2d at p. 810.) *Reichardt* then cited *Union Oil Co. v. Domengeaux* (1939) 30 Cal.App.2d 266, 273 [86 P.2d 127], and other authorities showing that "the [*Thompson*] rule should be applied only to exceptional cases . . . ." (*Reichardt, supra*, at p. 810; see also *SCT, U.S.A., Inc. v. Mitsui Manufacturers Bank* (1984) 155 Cal.App.3d 1059, 1064 [202 Cal.Rptr. 547] [finding *Thompson* "unpersuasive" in view of *Ley* and *Reichardt*].)

These cases are persuasive and accordingly the application of Code of Civil Procedure section 12 cannot be avoided here based on *Thompson* or *Derby*.[3]

■ Defendants argue, even if the first day of posting (June 17, 2009) is excluded, the 30-day posting requirement was satisfied because the evidence showed that the NOD was posted for part of the 30th day (July 17, 2009). Defendants rely on language in *Scoville, supra*, 131 Cal. 590 and other cases to the effect fractions of days are disregarded when time is computed. We agree *Scoville* sets the proper rule for this case, but *Scoville* indicates posting for the whole of the 30th day is required. The court wrote: "Where the law requires or permits an act to be done within a statutory period of time or number of days, the question becomes one simply of the measurement of time, and so measuring time the first day is excluded, *all of the last day included*, and fractions of days are totally and universally disregarded." (*Scoville, supra*, 131 Cal. at p. 596, italics added.)

■ Defendants do not dispute that the 30-day periods in the section 21167 statutes of limitations encompass the whole of the 30th day, and we fail to see why "30 days" in section 21152 as to the posting of an NOD should mean something different from "30 days" in section 21167 as to the filing of the NOD. Identical words in different statutes relating to the same subject matter are generally construed to have the same meaning. (E.g., *County of Ventura v. Gonzales* (2001) 88 Cal.App.4th 1120, 1124 [106 Cal.Rptr.2d 461]; *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 988 [95 Cal.Rptr.2d 837].) ■ *Green Foothills, supra*, 48 Cal.4th at page 43, observed that NOD's "alert the public about environmental decisions," and "must be available for public inspection for 30

---

[3] We note also that sections 21152 and 21167 requiring filing and posting for 30-days were enacted well after *Derby* and *Thompson* were decided and neither case involved similar posting and filing requirements.

days. . . . [¶] . . . 'Public notification serves the public's right "to be informed in such a way that it can intelligently weigh the environmental consequences of any contemplated action and have an appropriate voice in the formulation of any decision." ' " (Citations omitted.) The period of notice provided by the posting of an NOD should be fully coterminous with the period for challenging the determination described in the notice.[4]

■ Nor can we agree with defendants that the duration of posting in this case should be considered sufficient because it substantially complied with the statutory requirement. Cases that have applied the doctrine of substantial compliance to NOD's have addressed the contents of the notice, not the period of its posting. (E.g., *Sierra Club, supra,* 163 Cal.App.4th at p. 532; *International Longshoremen's & Warehousemen's Union v. Board of Supervisors* (1981) 116 Cal.App.3d 265, 273 [171 Cal.Rptr. 875]; see also *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 515 [106 Cal.Rptr.3d 858, 227 P.3d 416] [notice of exemption that "minimally complied with CEQA" was effective to trigger 35-day limitation period of § 21167, subd. (d)].) The substantial compliance doctrine should not be used to muddy up the calculation of statutory time periods. If the first day of posting could be considered, an argument for substantial compliance with the 30-day posting requirement could be made here in view of the evidence the NOD was posted for 30 consecutive 24-hour periods after it was filed. But any assessment of substantial compliance would introduce an element of subjective line drawing into an area where clarity and precision are vital. (*Ley, supra,* 212 Cal. at p. 594 [grave necessity that method of computing time be definite and certain]; *Scoville, supra,* 131 Cal. at p. 594.) Predictability and certainty are the twin guiding virtues that enable people to comply with legal requirements. Moreover, busy, concerned persons in a community are entitled to a full 30 days of posting in a public place so that they have time to read the posted notice, as the Legislature mandated. We therefore reject defendants' argument for substantial compliance with the posting requirement.

■ The statute of limitations in this case was 180 days, not 30 days, because the NOD was not posted for the prescribed period of time.[5]

---

[4] No issue of fact was raised under the evidence here as to whether the NOD was posted for the whole of the 30th day as we interpret section 21152, subdivision (c) to require. Even if the court were not inclined to credit plaintiff's declarations stating that the NOD was not posted in the late morning of July 17, 2009, Jorgensen's declaration showed at most that the NOD might have been posted until sometime "between 4:30 and 5:00 p.m." on that date, i.e., that it was taken down sometime before 5:00 p.m. when the office presumably closed.

We do not construe section 21152, subdivision (c) to mandate an NOD be posted on the last day of the 30-day period any longer than the county clerk's office is actually open to the public on that date.

[5] In view of this conclusion, we need not reach plaintiff's argument the 180-day statute applies because the NOD was filed prematurely.

## III. DISPOSITION

The judgment of dismissal is reversed.

Margulies, J., and Banke, J., concurred.